TOP RIDGE INVESTMENTS, LLC,

    Plaintiff,

    v.

ANICHINI, INC., ANICHINI
HOSPITALITY, INC., ANICHINI RETAIL,
INC., and SUSAN DOLLENMAIER,

    Defendants,

and

ROYAL HERITAGE HOUSE, LLC, and
JEFFREY TAUBER,

    Defendants-in-Counterclaim.

Case No. 5:16-cv-76

## DECISION ON MOTION FOR ATTORNEYS FEES
(Doc. 152)

This case concerns two primary issues: (1) a claim originally filed in New York state court by Top Ridge Investments, LLC ("Top Ridge") against Defendants Anichini, Inc., Anichini Hospitality, Inc., Anichini Retail, Inc., and Susan Dollenmaier to collect on a promissory note and personal guaranty; and (2) counterclaims by Defendants against Top Ridge, its principal Jeffrey Tauber and Royal Heritage House, LLC ("RHH"). The case was removed to the Southern District of New York (*see* Docs. 1, 9, 17) and transferred to the District of Vermont (Doc. 23).

The case went to trial before a jury in December 2017. The jury did not address Top Ridge's breach-of-contract claim on the promissory note, since the parties did not dispute default or the principal amount owed ($453,269.16). (*See* Doc. 142 at 10–11.) The jury found against

the Anichini parties[1] on their misrepresentation claim against RHH,[2] and found that RHH breached a term of its contract for the acquisition of the Anichini companies, but that the Anichini parties had not proved that the breach caused damages. (Doc. 146.) The court has ordered a new trial on the counterclaims and third-party claims. (Doc. 162.)

Top Ridge seeks an award of attorneys fees in the amount of $489,297.50 and costs in the amount of $28,776.38. (Docs. 152, 160, 161.)[3] In their Objection to Top Ridge's fees request, the Anichini parties state that:

(1) Top Ridge should only recover for fees it actually incurred and paid. Since Plaintiff's counsel was retained and paid by RHH, Top Ridge should not recover fees.

(2) Top Ridge should not recover fees incurred in the defense of claims against RHH and Jeffrey Tauber;

(3) RHH's breach of its agreement to acquire the Anichini companies and employ Ms. Dollenmaier prevents Top Ridge from recovering fees or costs incurred when the promissory note went unpaid as a consequence of RHH's actions.

(Doc. 155.) Top Ridge maintains that its application for an award of attorneys fees should be granted. (Doc. 156.)

Vermont follows the "American Rule," under which "parties bear their own litigation costs, including attorney's fees, unless provided otherwise by contract or statute." *Walsh v.*

---

[1] The "Anichini parties" means all of the Defendants except for Anichini Retail, Inc., which did not appear at trial due to a prior bankruptcy.

[2] Claims against Jeffrey Tauber were not submitted to the jury by agreement because of insufficient evidence to hold him personally liable for the actions of RHH.

[3] The fees and costs requested in Top Ridge's January 3, 2018 motion totaled $446,810.50 and $22,234.70, respectively. (Doc. 152-1 at 6.) Supplemental declarations in February 2018 updated those figures to $489,297.50 and $28,776.38, respectively. (Docs. 160, 161.)

*Cluba*, 2015 VT 2, ¶ 15, 198 Vt. 453, 117 A.3d 798. In this case, as described below, the relevant contracts do include fee-shifting provisions. Since fees must be reasonable, *id.*, the court will first address the proof of the reasonableness of the attorneys fees. It will then address the three issues raised by the Anichini parties in the Objection they filed to the claim for attorneys fees (Doc. 155).

I.   **Reasonable Fees**

In reviewing Top Ridge's fee request, the court begins with the "lodestar" method. This method depends upon a determination of the number of hours reasonably expended on the litigation and a reasonable hourly rate. *Blum v. Stenson*, 465 U.S. 886, 888 (1984); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany*, 522 F.3d 182, 186 (2d Cir. 2008). Although not always conclusive, the lodestar calculation creates a "presumptively reasonable fee," and absent extraordinary circumstances, failure to calculate it as a starting point is legal error. *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).

The court sets forth its lodestar calculation below. The lodestar method has been described as an "economic model," but there is also the 12-factor "*Johnson*" approach—a model that is based on the court's "experience and judgment." *See Arbor Hill*, 522 F.3d at 187–88. The court recognizes the doubt cast in recent cases on the 12-factor test established in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). *See Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.*, 880 F.3d 620, 634 n.8 (2d Cir. 2018) (citing *Perdue v. Kenney A. ex rel. Winn*, 559 U.S. 542, 550–52 (2010).[4] Here—as in *A. ex rel. Mr. A. v. Hartford Board of*

---

[4] The twelve *Johnson* factors are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent;

3

*Education*, No. 3:11-CV-01381-GWC, 2017 WL 187138, at *2 (D. Conn. Jan. 17, 2017)—the court concludes that the "best course is to avoid becoming fixated on any particular method," and to instead consider both the lodestar and *Johnson* models.

### A.   Reasonable Rates

Based upon the declarations submitted by Plaintiff's lead counsel Mark Gross and Vermont counsel Mark Werle, the court finds that the hourly rates charged by the attorneys are reasonable in amount. Multiple partners, associates, and paralegals representing Top Ridge billed hours on this case, including Mr. Gross and associates at his current and former firms— Fox Rothschild LLP ("Fox") and Greenbaum, Rowe, Smith & Davis, LLP ("Greenbaum"), respectively—as well as Mr. Werle and associates at his Vermont firm (Ryan Smith & Carbine ("RSC")). Mr. Gross billed at hourly rates between $516.33 and $535.30. Mr. Werle and his partners billed at hourly rates in the $240–250 range. (*See* Docs. 152-3, 152-4.)

These figures are not challenged by counsel for the Anichini parties. They are reasonable and supported in light of the *Johnson* factors, including the experience and duties of the attorneys and paralegals and the market rates for counsel from the New York region. The rates are consistent with the experience of this court in attorneys fee litigation. *See, e.g., Bank of Am., N.A. v. New England Quality Serv., Inc.*, No. 5:16-cv-83 (D. Vt. Aug. 2, 2018), ECF No. 134 (finding $280 hourly rate to be reasonable in commercial lending case); *see also A. ex rel.*

---

(7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d 186 n.3 (citing *Johnson*, 488 F.2d at 717–19).

4

*Mr. A.*, 2017 WL 187138, at *7 (approving an hourly rate of $450 to experienced Hartford area attorney in educational IDEA litigation).

### B. Reasonable Hours

With respect to the time spent, the court is satisfied that the detailed billing records demonstrate that the attorneys at the three firms (Mr. Gross worked first at Greenbaum and moved during the life of this case to the Fox firm, both in New Jersey) spent the hours they claimed. The individual time entries reflect tasks which were necessary for the litigation of the case from initial filing through jury trial. As in the case of the billing rates, the Anichini parties do not object to the documentation of the various tasks performed.

In short, the "lodestar" analysis supports the total amount claimed. The remaining issue is whether any of the three objections raised by the Anichini parties should alter the amount of the attorneys fee award. Some of the issues raised in the objections go to the question of the results obtained, which is frequently a critical factor in a fee analysis. *See Centrella v. Ritz-Craft Corp. of Pa., Inc.*, No. 2:14-cv-111-jmc, 2018 WL 840041, at *10 (D. Vt. Feb. 12, 2018) ("The United States Supreme Court has consistently stressed the importance of the degree of the plaintiff's success in the litigation as a factor affecting the size of the fee to be awarded." (quoting *Kassim v. City of Schenectady*, 415 F.3d 246, 252–56 (2d Cir. 2005))); *Walsh*, 2015 VT 2, ¶ 15 (court may adjust lodestar based on factors such as results obtained in the litigation). The court considers that factor in the course of its analysis below.

## II. Anichini Parties' Objections

### A. Fees Limited to Amounts Paid by Top Ridge

The evidence in this case showed that Top Ridge was a single-purpose entity formed by Jeffrey Tauber in order to purchase the Anichini bank debt from People's United Bank as part of

5

a larger transaction in which RHH and Jeffrey Tauber would acquire the Anichini parties. Top Ridge has no function except as the assignee of the promissory note and security documents. Mr. Tauber has paid a substantial part of the outstanding bill. (*See* Doc. 152-10 at 3 (documenting $149,308.23 paid to the Greenbaum firm).)

There is no requirement that a subsidiary company such as Top Ridge make payments out of its own funds in order to make a claim for attorneys fees. In this case, Mr. Tauber is a member of Top Ridge, LLC. He paid the fees. His payment does not invalidate the fee-shifting provision in the promissory note.

### B. Fees Incurred in Connection with the Defense of Claims Against RHH and Jeffrey Tauber

The fee-shifting provision in the promissory note originally ran between People's United Bank (then Chittenden Bank) and the Anichini companies. By its language, it authorizes the recovery of the lender's cost in "hir[ing] or pay[ing] someone else to help collect this Note if Borrower does not pay. Borrower will pay Lender that amount." (Doc. 152-6 at 1.) The other security agreements contain similar provisions. The Commercial Security Agreement, for example, provides that "Grantor agrees to pay upon demand all of Lender's costs and expenses, including Lender's reasonable attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement." (Doc. 152-9 at 5.) The Lender is consistently defined as the Chittenden Bank.

When Top Ridge acquired the promissory note, it replaced People's Bank as the lender. It holds all of the rights of the lender, including the right to reimbursement of attorneys fees. No provision of the loan documents, however, extends the right to attorneys fees to other entities such as RHH or to the defense of third-party actions filed against RHH and Mr. Tauber. Claims for attorneys fees arising under fee-shifting contracts are construed narrowly because they are in

derogation of the American Rule. *See Southwick v. City of Rutland*, 2011 VT 105, ¶ 6, 190 Vt. 324, 30 A.3d 1298 ("When a contract provides for payment of attorney's fees, a court may depart from the American Rule only to the extent that the contract provides."); *see also Partners for Payment Relief, LLC v. Dreambuilder Invs., LLC*, No. 12-cv-1414(RJS), 2016 WL 4205595, at *3 (S.D.N.Y. Aug. 8, 2016) (noting New York courts' narrow construction of contractual fee-shifting provisions); *BKCAP, LLC v. Captec Franchise Tr. 2000-1*, 701 F. Supp. 2d 1030, 1034–35 (N.D. Ind. 2010). The court will not award fees to RHH and Mr. Tauber on the basis of the provisions in the loan documents assigned to Top Ridge.

Separating the legal work performed in pursuing the claim by Top Ridge from the work required to defend RHH and Mr. Tauber is complicated by the overlapping theory advanced by the Anichini parties against Top Ridge and RHH/Tauber. In answering Top Ridge's complaint, the Anichini parties alleged that the acquisition of the loan was part of a larger transaction. The Third Affirmative Defense states:

> The acquisition by Top Ridge of the Loan from the Bank was in connection with a broader Agreement pursuant to which Top Ridge's affiliate, RHH or designee, was to acquire Anichini, and when Top Ridge acquired the Loan, it did so not for the purpose of acquiring a loan, but as the first step in the acquisition of Anichini and, as such, the Loan has been paid.

(Doc. 26 at 8.) This theory was identical to the theory advanced in the third-party claim against RHH and Tauber. "Immediately after acquiring the Bank Loan, RHH/Top Ridge breached its Agreement with Anichini and Dollenmaier by . . . failing to proceed with the acquisition and merger." (*Id.* at 14, ¶ 26.)

In its decision denying Top Ridge's motion for summary judgment on the note, the court accepted for purposes of the motion Anichini's account of a single transaction in which Top Ridge joined RHH and Mr. Tauber in breaching a broad agreement to acquire Anichini. "Viewed in the light most favorable to Anichini and Ms. Dollenmaier, the record evidence

7

supports their claim that RHH, Mr. Tauber, and Top Ridge joined in breaching the contract described in successive term sheets." (Doc. 82 at 9.) As a consequence, Top Ridge remained a party at the jury trial.

Once the trial started, the evidence established without any opposition that the note was in default and that Top Ridge was entitled to judgment. The proof of the note and resulting damages were undisputed. There was no counterclaim against Top Ridge. There was no proof that Top Ridge functioned as anything other than a single purpose LLC formed to hold the bank debt. The only issues which went to the jury concerned the third-party claim against RHH and Mr. Tauber.

On the one hand, the court is satisfied that Top Ridge's continued presence in the case and the need for a defense was the result of a strategic decision by the Anichini parties to keep Top Ridge in the case until trial. The court intends no criticism of either side. But Plaintiff's counsel was obliged by the allegations in the answer and by the court's ruling withholding summary judgment on the promissory note to continue to pursue Top Ridge's claim for payment as well as to defend Top Ridge against allegations that it played a role in the breach of the larger agreement to acquire the Anichini parties at trial.

On the other hand, it is clear now that most of the issues in dispute in this case involved only RHH, Jeffrey Tauber and the Anichini parties. These issues preceded the involvement of Top Ridge in purchasing and seeking to collect the promissory note. These issues arose from Mr. Tauber's determined and protracted efforts to persuade Ms. Dollenmaier to sell her company to him and his breach of that agreement which has now been established by jury verdict. While it is difficult to separate the yolk from the egg white, it is very clear that Top Ridge and the

amounts due under the promissory note represented a small and ultimately undisputed portion of a larger controversy in which Ms. Dollenmaier prevailed in important respects.

For these reasons, the court will reduce the amount claimed by Plaintiff's counsel by 50 percent. The amount of the reduction is necessarily inexact. It is not possible to review a time entry and determine which aspect of the controversy it concerned. The reduction may be seen as too low because by the end of the case, the parties' dispute was almost entirely concerned with the breach of the larger agreement by RHH to acquire the Anichini companies. And, indeed, this had been the principal focus for much of the litigation. The reduction may be seen as too high because at the outset of the case prior to its transfer to this district and the filing of the answer, the litigation between the parties concerned Top Ridge's efforts to obtain pre-judgment remedies securing the position of its loan. This was work which falls easily within the scope of the attorneys fee provision in the promissory note and security documents.

### C. Breach by RHH Prevents a Recovery of Fees by Top Ridge

The Anichini parties argue that Top Ridge should not recover attorneys fees at all because RHH was found in breach of the agreement to acquire the Anichini parties. The simplest answer to this claim is that while it is true that the jury found RHH in breach, the Anichini companies failed to offer any evidence of consequential damage. The only damage claim was asserted by Ms. Dollenmaier for her lost wages. That claim is subject to an order granting a new trial. Top Ridge has obtained a verdict on a contract claim for money damages for failure to repay a promissory note. It was not an equitable claim subject to requirements of clean hands. Top Ridge was not even named in a counterclaim. At this point, following a jury trial in which it prevailed, there is no legal basis for preventing Top Ridge from recovering principal, interest, and attorneys fees as provided in the note.

9

## III. Imposition of Fees and Costs

For the reasons stated above, the court will award 50% of the fees and costs sought by Top Ridge. The following table summarizes the fees and costs requested by Top Ridge (Doc. 152), accounting for the February 2018 supplemental declarations (Docs. 160, 161):

|  | Fees | Costs |
| --- | --- | --- |
| Mr. Gross & the Fox Firm | $279,877.00 | $24,279.98 |
| Mr. Gross & the Greenbaum Firm | $165,639.50 | $4,346.40 |
| Mr. Werle & RSC | $43,781.00 | $150.00 |
| **TOTALS** | **$489,297.50** | **$28,776.38** |

Applying the 50% reduction to the total figures for fees and costs, the court will award **$244,648.75** in fees, and **$14,388.19** in costs.

## IV. Interest and Late Fees

Defendants do not take issue with the calculation of interest ($151,989.86 as of 1/3/18) and late fees ($4,810.63). These amounts shall be awarded to Top Ridge.

## Conclusion

Top Ridge's Motion for Attorney's Fees, Interest and Late Fees (Doc. 152) is GRANTED IN PART and DENIED IN PART as described above.

The sums of **$244,648.75** in attorneys fees and **$14,388.19** in costs—plus principal, interest, and late fees—shall make up the recovery awarded to Top Ridge in the final judgment order which will issue following retrial of Ms. Dollenmaier's claim.

Dated at Rutland, in the District of Vermont, this 26 day of September, 2018.

Geoffrey W. Crawford, Chief Judge
United States District Court

10